[No. 4447.   Decided July 19, 1904.]

CARRIE B. FRIEND, *Respondent*, v. F. H. RALSTON *et al.*,
   *Respondents*, and THE UNITED STATES FIDELITY
      AND GUARANTY COMPANY, *Appellant.*[1]

INDEMNITY—BUILDING CONTRACT—AGREEMENT TO FURNISH ALL
MATERIAL—BREACH—FILING OF MECHANICS' LIEN—SUIT ON BOND
BEFORE DISCHARGE OF LIEN.   Where an indemnity bond guaran-
tees the faithful performance of a building contract in which the
contractors agree to furnish all the material for the building,
the failure of the contractors to pay for the materials furnished,
resulting in the filing of a mechanics' lien, is a breach of the con-
tract and the bond, entitling the owner to maintain a suit on the
bond before the payment and discharge of the lien claim for
materials.

SAME—DEFENSES—FAILURE TO PAY CONTRACTORS—CREDITS FOR
BALANCE DUE ALLOWED ON CLAIM AGAINST CONTRACTORS.   In an
action upon a bond guaranteeing a building contract, in which the
owner seeks to recover the amount of a judgment establishing a
mechanics' lien for material furnished to the contractors, it is no
defense that the plaintiff had refused to pay the contractors two
small items for a balance due and for extras, where due credits
were received therefor by the contractors and inured to the ben-
efit of the surety on the bond, having been deducted from the
amount of the plaintiff's claim.

SAME—JUDGMENT AGAINST PRINCIPAL—NOTICE TO THE SURETY
TO DEFEND—ESTOPPEL.   Where a surety company guaranteed, by
its bond, the faithful performance of a building contract in which
the contractors agreed to furnish all the material, and is given
due notice to defend an action commenced by materialmen to
foreclose a lien for material furnished to the contractors, a judg-
ment obtained in good faith against the contractors, the prin-
cipals in the bond, establishing the claim and foreclosing the lien,
is binding upon the surety, to the same extent that it binds the
contractors, and in an action on the bond estops the surety com-
pany from claiming that there was no breach of the contract.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered April 29, 1902, upon the ver-

1Reported in 77 Pac. 794.

dict of a jury rendered in favor of the plaintiff by direction of the court, after a trial on the merits, in an action on an indemnity bond guaranteeing a building contract.

*James B. Murphy,* for appellant.

*Ralph Simon,* for respondent.

PER CURIAM.—This action was begun in the superior court of King county by Carrie B. Friend, plaintiff, against H. F. Ralston and D. A. Royea, copartners doing business under the firm name and style of Ralston & Royea, and the United States Fidelity and Guaranty Company, defendants. On the trial of the issues between the plaintiff and the defendant United States Fidelity and Guaranty Company, before the court below and a jury, a verdict was rendered in favor of plaintiff for $1,206.41, under direction of the trial court, April 10, 1902. Judgment was entered on this verdict April 29, 1902, from which the United States Fidelity and Guaranty Company appeals.

On the 21st day of January, 1901, at the city of Seattle, respondent Carrie B. Friend entered into a written contract with the respondents Ralston & Royea for the construction, in said city, on the real estate of Mrs. Friend, of a certain two story frame building, for the consideration of $7,753. On the 25th day of January, 1902, Ralston & Royea, as principals, with appellant company as surety, executed a bond to Carrie B. Friend in the penal sum of $3,000. Such bond by recitals referred to this building contract, and contained the following conditions: "Now, therefore, the condition of the foregoing obligation is such that, if the said principals shall well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract on their part to be kept and

performed, according to its tenor, then this obligation to be null and void, otherwise to be and remain in full force and virtue in law." The above contract, among other things, provided that the contractors, at their own expense, should provide and supply all manner of materials and labor for the construction of this building, and complete the same on or before May 1, 1901. The provisions of the third and fifth paragraphs of the contract are as follows:

"THIRD: Should the owner at any time during the progress of said building require any alterations, deviations, additions to, or omissions from the said contract, specifications or plans, she shall be at liberty to have such changes made, and the same shall in no way affect or avoid the contract, but the additional costs (if any) of such changes will be added to the amount of such contract price, and deductions shall be made from said contract price for all omissions of work specified, at a fair and reasonable valuation."

"FIFTH: Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by McManus & Walker, architects, and their decision shall be final and conclusive, and should any dispute arise respecting the true value of any extra work, or omitted work, the same shall be valued by two competent persons, one employed by the owner and the other by the contractors, who, in case they cannot agree as to the value of such extra work or omitted work, shall name an umpire, whose decision shall be binding on all parties."

These contractors, Ralston & Royea, purchased from the Kerry Mill Company lumber and material which was used in the construction of this building. The balance remaining due therefor was $1,179.49. On June 15, 1901, the architects, McManus & Walker, issued their final certificate with regard to the completion of the building under the contract. The Kerry Mill Company, on August

21, 1901, filed a lien upon said property, and brought action in the court below to foreclose the same, making Carrie B. Friend and Ralston & Royea defendants therein. Ralston & Royea also filed a lien on said premises for $152, the balance due on the contract, and, also, for $1,410.25, on account of extra work and materials, and brought suit to foreclose such lien. Mrs. Friend answered the complaint of the contractors, denying the material allegations thereof, except an item of $8. She further alleged in her answer a demand for $599.90 for work and materials omitted; also, a claim for demurrage in delaying the completion of the building till June 16, 1901, and the filing of the lien of the Kerry Mill Company, and the action instituted for the foreclosure thereof. The reply of the contractors admitted that the building was not completed till June 16, 1901, and denied allegations regarding the omission of any work or materials.

The contractor's bond provides, "that any suits at law or proceedings in equity brought against this bond . . . must be instituted within six months after the first breach of said contract;" that a registered letter, mailed to the president of appellant company, at its principal office in Baltimore City, Md., shall be deemed sufficient notice. On September 18, 1901, Mrs. Friend, by her attorney, notified appellant by registered letter of the bringing of the Kerry Mill Company's lien suit, and tendered the defense thereof to appellant. It appears, from the recitals in such notice, that Mrs. Friend was served with the summons and complaint in such action on September 17, 1901. The appellant disregarded such notice, and failed to take any part in such defense.

These two lien cases were consolidated, and tried together. The lower court found in favor of the Kerry

Mill Company in the sum of $1,280.04, and also decreed that its lien therefor, together with an attorney's fee and costs, be foreclosed against said premises. The court further found that Mrs. Friend was indebted to the contractors in the sums of $28 for extra work, and $152 for balance due on the contract price, and on February 13, 1902, rendered judgment in her favor against Ralston & Royea for $1,100.04 and costs.

This action was instituted by Carrie B. Friend to recover damages on the bond, for the failure on the part of Ralston & Royea to perform their part of said contract, and by reason of the foregoing facts and judicial proceedings. On the 3rd day of March, 1902, respondent Carrie B. Friend, by order of the trial court, based on the stipulation of the parties, filed her amended and supplemental complaint in the action, wherein, among other things, she alleged notice to appellant to defend as above stated, the rendition of said judgment against the contractors, Ralston & Royea, and appellant company's knowledge of the matters litigated, limiting her demand for judgment to the amount of the judgment recovered by her against Ralston & Royea.

Appellant answered the complaint, in which answer it denied certain allegations thereof, admitted the execution of the contract and bond, and set forth several affirmative defenses. The first affirmative defense in substance alleges, that certain changes, deviations, and alterations were made by the mutual consent of the contractors and Mrs. Friend, as outlined in the plans and specifications; that the reasonable value of such extra work and material was greater than the amount sought to be recovered in this action, and the penalty of the contractors' bond; that no allowance was made to the contractors for such material

and labor, and that Mrs. Friend was still indebted to them for the same. The second affirmative defense alleges matters with regard to extra work and material furnished pursuant to oral agreements, made between the contractors and owner contrary to the plans and specifications which were a part of the building contract. The provision claimed to have been violated is as follows: "No bills or accounts for extra work will be allowed or paid unless authority for contracting same can be shown by a certificate from the owner, countersigned by the architect." It is further charged in this defense that such charges were made without the knowledge or consent of appellant. The third separate defense, after alleging that there was extra work and material furnished in the construction of this building, charges that the contractors and owner were unable to agree upon the allowance therefor, that the contractors, pursuant to the provisions of the above paragraph five of the building contract, offered to submit the value of such extras to arbitration, and that Carrie B. Friend refused to select an arbitrator or submit such dispute to arbitration. The fourth and last of these affirmative defenses charges that respondent Mrs. Friend failed and refused to make payments to the contractors, as provided in the building contract, and withholds the same.

After respondent had submitted her evidence at the trial, including the notice to defend and judgment roll above mentioned, appellant insisted that the complaint did not state facts sufficient to constitute a cause of action, and further that the evidence in behalf of respondent Friend was insufficient to entitle her to any relief. The trial, including the notice to defend and judgment roll which rulings it duly excepted. The trial court excluded all evidence in support of the affirmative defenses, respectively, and appellant excepted. Thereafter the following

written stipulation between the parties to this action was filed in the trial court:

"Whereas, upon the trial of this cause, no opportunity was given to the United States Fidelity & Guaranty Company, one of the defendants herein, to introduce testimony in support of its denials, and in answer to the evidence introduced on behalf of the plaintiff after the motion to exclude testimony under the affirmative defenses set out in its answer were passed upon by the court:

"It is now stipulated that under the order offered in evidence by the plaintiff, given by Ralston & Royea to Calhoun, Denny & Ewing, dated ————, the said plaintiff paid the sums represented by the receipts from said agents, and did not pay nor offer to pay to them any other, or further sum, and that she, the said plaintiff, did withhold from the said Ralston & Royea and the said agents, the sum of $152.00 on the original contract price as named in the building contract which is an exhibit herein, and the $28.00 for extra work, these being the same amounts found by the court to be due Ralston & Royea according to the findings of fact offered in evidence and marked (Plaintiff's Exhibit ————).

"And it is further stipulated that the defendant aside from testimony to the above effect, had no testimony to offer in support of its denials or in answer to the testimony offered on behalf of the said plaintiff, except in support of the matters set out in its separate affirmative defenses; and the said defendant hereby waives any claim or error which it might have predicated upon the action of the court above referred to and that if said cause be appealed to the supreme court no error will be claimed or assigned by reason thereof.

"Dated at Seattle, Washington, this 24th day of April, A. D., 1902."

Under direction of the lower court, the jury returned a verdict in behalf of respondent Carrie B. Friend, on which the judgment appealed from was entered.

After the perfection of the present appeal, Carrie B. Friend died. On suggestion of her death, by order of this court, her executor, Ralph Simon, was substituted herein as respondent in her stead. The propositions of law arising upon this record, under the assignments of error, are: (1) That the original and supplemental complaints fail to state a cause of action; (2) that the court below erred in denying appellant's motion for a nonsuit, and (3) error in excluding the evidence in support of appellant's four affirmative defenses respectively.

In support of the first assignment, it is urged that, in order to entitle respondent Friend to recover in the present controversy, she must have paid the judgment of the Kerry Mill Company against Ralston & Royea, which, as we understand by appellant's contention, includes the original demand constituting the consideration of such judgment, as the action at bar was originally begun prior to the rendition of that judgment; that, therefore, both the original and supplemental complaints, failing to allege such payment prior to the commencement of this action, do not state facts sufficient to constitute a cause of action against this appellant company.

The building contract was made a part of the bond in question. The contractors, among other things, undertook, by the express terms of their contract, to provide and supply, at their own cost and expense, all the materials necessary for the completion of said building and the fulfillment of such contract. The appellant company, for a consideration, guaranteed that these contractors should well, truly, and faithfully comply with all the terms, covenants, and conditions of such agreement on their part to be performed. These complaints respectively allege, that Ralston & Royea purchased materials for this building of the Kerry Mill Company, in furtherance of their

said contract with Mrs. Friend, the owner of the premises; that, by their (the contractors') failure to pay for the same, Mrs. Friend's property became subject to a lien at the instance of the Kerry Mill Company. "Where the contractor for the erection of a building gave a bond with sureties to 'faithfully perform all the covenants and agreements contained in the building contract,' etc., and the building contract provided that he was 'to furnish all the material, such as lumber, hardware, brick, lime, sand, paints, oils, etc., as per specifications,' held, that a failure to pay for such materials, whereby a mechanics' lien was filed on the building and lot, was a breach of the condition of the bond, and rendered the builder and his sureties liable thereon." *Kiewit v. Carter,* 25 Neb. 460, 41 N. W. 286.

The learned counsel for appellant cites numerous authorities with reference to the nonliability of sureties on bonds or covenants of indemnity "to save and keep harmless the obligee from certain outstanding debts, or that the party indemnified shall not sustain damage incurred through the omissions or acts of the principal, etc., until the obligee shall have paid or discharged such debts, or may have otherwise sustained financial loss. *Miller v. Fries,* 66 N. J. L. 377, 49 Atl. 674. But there is a marked distinction between covenants of that description and agreements that the obligors shall perform specific acts. *Litchfield v. Cowley,* 34 Wash. 566, 76 Pac. 81; *Wright v. Whiting,* 40 Barb. 235. The covenant in the building contract on the part of the contractors with Mrs. Friend is, as between them, equivalent to a direct promise to pay for materials used in the construction of the building, and a breach of the contract occurred when the contractor suffered the obligation to become a charge on her property; at least, she was entitled to treat it as

a breach. It may be true that she was not obligated to
do so; that she could have waited until the lien had be-
come fixed and determined by judgment against her prop-
erty, and treated that as the breach of the bond, thus
escaping the onus of establishing, at the trial, the validity
of such lien and the amount of the indebtedness, but she
was not obliged to delay action in that behalf. She could
treat the failure of the contractors to keep her property
free from such incumbrance as a breach of the contract.
Therefore, the position of appellant's counsel that this
action was prematurely brought is untenable. In the
light of the above authorities relative to primary and
affirmative covenants to perform some particular act, we
conclude that the original and supplemental complaints
state sufficient facts to constitute a cause of action.

The assignments of error pertaining to the refusal of
the lower court to grant appellant's motion for a nonsuit,
and in excluding its evidence in support of the several
affirmative defenses, may properly be treated and consid
ered under one head, and in the same connection. The
appellant contends that the testimony in respondent's be-
half disclosed that she had not fulfilled her agreement with
her contractors, in that she had refused to pay them the
above items $152, balance on contract price, and $48 for
extra work, and that therefore the lower court erred in
denying the nonsuit.

The case of *Cowles v. United States Fidelity and Guar-
anty Co.*, 32 Wash. 120, 72 Pac. 1032, was similar in
many of its salient features to the action at bar. In that
case this court held (quoting from the syllabus, which
tersely presents the points decided):

"A guaranty company which, for a compensation, be-
comes surety upon the bond given by a building contractor
for the faithful performance of his contract cannot escape

liability by reason of deviations from the exact terms of the contract, where such provisions were waived by the contractor and no damage is shown as resulting to the surety by reason thereof."

In the consolidated actions above noted, it fully appeared that the contractors, Ralston & Royea, received due credits for the two items of $152, balance of contract price, and $48 for extra work, which inured to the benefit of this appellant. The stipulation as to these credits in terms related to the action of the lower court regarding its decision denying the ·nonsuit; still, it contained admissions which were properly in the case for all purposes, and it is questionable whether appellant could, in any event, be permitted to controvert such admissions as to these several amounts withheld from the contractors by Mrs. Friend, when it thereafter undertook to sustain any of the averments of these affirmative defenses at variance with such stipulation. *Sherman v. Sweeny,* 29 Wash. 331, 69 Pac. 1117.

However, we consider that the vital question with regard to the sufficiency of such defenses is, whether the judgment in the consolidated lien cases above noted, which is described in the supplemental complaint, estops the appellant. It had due notice of the pendency of the Kerry Mill lien suit, one of the cases consolidated, and it was offered the defense thereof on the part of this respondent Mrs. Friend. Such action was instituted to recover on a· demand for materials purchased by the contractors in furtherance of their said building contract, the faithful performance of which, on the part of Ralston & Royea, was guaranteed by the appellant company. The judgment in favor of Mrs. Friend against her contractors was obtained in good faith without fraud or collusion. This judgment related exclusively to matters connected with the

contract and bond, in which appellant was closely identi-
fied and directly interested. The following language is
quoted from the opinion of the court in *Cowles v. United
States Fidelity and Guaranty Co., supra*:—

"It is the contract instead of the bond which is pri-
marily to be construed, and the construction of the con-
tract cannot be affected by the fact that a bond is given
for its performance. It must be construed with reference
to the gathered intention of the parties to the contract, and
whatever is binding upon them is binding upon the surety,
who becomes a party to the contract, identified with the
contractor."

We are of the opinion that, under the facts appearing in
this record, the appellant company is bound by the judg-
ment recovered against the contractors in favor of the
owner, Mrs. Friend; that this case in that regard falls
within the principles of law enunciated in *Douthitt v.
MacCulsky*, 11 Wash. 601, 40 Pac. 186, and *Doremus v.
Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649. See,
*Lovejoy v. Murray*, 3 Wall. 1, 18, 18 L. Ed. 129; 6 Rose's
Notes on U. S. Rep., p. 458; *Prichard v. Farrar*, 116
Mass. 221.

Appellant's counsel has directed our attention to many
authorities in support of his position, that a judgment
rendered against the principal on a bond does not estop
the surety from relitigating the merits of the controversy,
where such judgment was obtained in an action on the
original contract, as distinct from the bond for its faithful
performance, without making the surety a party defend-
ant. The case of *McConnell v. Poor*, 113 Iowa 133, 84
N. W. 968, 52 L. R. A. 312, is an authority upon which
appellant places its principal reliance, but we fail to dis-
cover wherein it is in conflict with the conclusions hereto-
fore declared respecting this feature of the present contro-

versy. Notwithstanding the statement in the syllabus, the case fails to show that the surety had notice of the prior suit against his principal, or was given any opportunity to appear and defend such action, and it further appeared that the plaintiff had elected to treat the bond and contract as separate instruments for the purposes of the litigation. The able court properly held that a judgment, rendered in favor of the obligee for breach of the contract against the principal, did not estop the surety when sued on the contractor's bond. Again, in this Iowa case, the record fails to show that the surety had any further interest in the contract of his principal other than that of a mere surety without compensation. The facts in the case before us, as we have shown, are entirely dissimilar, and render the rule of the Iowa case inapplicable.

No reversible error appearing in the record, it follows that the judgment of the lower court must be affirmed, with costs, and it is so ordered.